Argued and submitted January 15, 2014, affirmed November 12, 2015

William R. WOHRMAN
and Janice C. Wohrman,
Trustees of the Wohrman Family
Revocable Living Trust
Dated 4/11/95,
*Plaintiffs-Appellants,*

*v.*

Edward S. ROGERS;
and Jeffrey O. Anderson,
dba JJR Enterprises, LLC,
*Defendants,*

*and*

Jerry O. ANDERSON,
*Defendant-Respondent.*

Klamath County Circuit Court
1001193CV; A150057

362 P3d 704

George W. Kelly argued the cause and filed the briefs for appellants.

David A. Jacobs argued the cause for respondent. On the brief were Joel S. DeVore and Luvaas Cobb.

Before Nakamoto, Presiding Judge, and Egan, Judge, and Flynn, Judge.*

FLYNN, J.

___

* Flynn, J., *vice* Armstrong, P. J.

## FLYNN, J.

Plaintiffs appeal a judgment for defendant Jerry O. Anderson[1] on plaintiffs' action to recover on a loan that plaintiffs made to JJR Enterprises, LLC (JJR), an Oregon limited liability company of which defendant was a member. Plaintiffs alleged that defendant was personally liable on the promissory note for the loan to JJR, in the way that a general partner would be liable for a loan to a partnership, because JJR had been administratively dissolved prior to taking on the loan agreement. The trial court ruled that, because defendant lacked actual knowledge of the dissolution, he is protected from personal liability for the loan under ORS 63.165. That statute provides that members of a limited liability company (LLC) are not personally liable for debts, obligations or liabilities of the LLC "solely by reason of being or acting as a member or manager." Plaintiffs assign error to the court's ruling and argue that, for obligations that the LLC undertakes after dissolution, members retain the protection described in ORS 63.165 only if the obligation arises from a transaction that was appropriate to winding up and liquidating the LLC. We conclude that the scope of ORS 63.165 is not as limited as plaintiffs contend; that members of a dissolved LLC do not become liable for obligations of the LLC solely because they arise from a post-dissolution transaction that was unrelated to winding up and liquidating the LCC. Accordingly, we affirm.[2]

## I.  BACKGROUND

The essential facts are largely undisputed. In the 1970s, defendant incorporated a construction business called Anderson Builders, Inc. Defendant worked at Anderson Builders with his son, Jeffrey Anderson (JA), and with Edward Rogers. In 1999, defendant, JA, and Rogers formed JJR, and registered it as an Oregon limited

---

[1] The complaint named as defendants Edward S. Rogers, Jerry O. Anderson, and Jeffrey O. Anderson, d/b/a JJR Enterprises, LLC. Only Jerry O. Anderson remained in the case at the time of the general judgment, and he is the "defendant" to which we refer in this opinion.

[2] In litigation below, the parties agreed that defendant would have no immunity if he had possessed actual knowledge of the dissolution. The trial court found that defendant lacked actual knowledge, and plaintiffs do not challenge that finding on appeal.

liability company. Each of the three members held a one-third interest in JJR. The articles of organization filed with the Secretary of State in 1999 list defendant as both the "organizer" and registered agent for JJR. The filing gave a business address for JJR that was also the business address for Anderson Builders.

In 2003, defendant sold Anderson Builders to JA and Rogers. Also in 2003, Anderson Builders and JJR sold a jointly developed property. After that sale, JJR engaged in no business activity apart from holding title to some real property.

In March 2004, the Corporation Division of the Oregon Secretary of State issued a notice to JJR, at the business address it shared with Anderson Builders, advising that JJR had failed to file its annual report and fee and needed to correct those omissions within 45 days to avoid having the entity's status changed to "inactive." When JJR failed to file the annual fee and report, the Secretary of State then administratively dissolved JJR as of April 30, 2004.[3] The administrative dissolution meant that JJR "continues its existence but may not carry on any business except that which is appropriate to wind up and liquidate its business and affairs." ORS 63.637(1).

Four years later, Anderson Builders was experiencing financial difficulty, and approached plaintiffs about

---

[3] ORS 63.647 provides, in pertinent part:

"The Secretary of State may commence a proceeding under ORS 63.651 to administratively dissolve a limited liability company if:

"(1) The limited liability company does not pay when due any fees imposed by this chapter.

"(2) The limited liability company does not deliver its annual report to the Secretary of State when due."

ORS 63.651 provides, in pertinent part:

"(1) If the Secretary of State determines that one or more grounds exist under ORS 63.647 for dissolving a limited liability company, the Secretary of State shall give the limited liability company written notice of the determination.

"(2) If the limited liability company does not correct each ground for dissolution or demonstrate to the reasonable satisfaction of the Secretary of State, within 45 days after notice is given, that each of the grounds that the Secretary of State has determined to be a ground for the dissolution does not exist, the Secretary of State shall dissolve the limited liability company."

a loan. Plaintiff William Wohrman, as trustee for the Wohrman Family Revocable Living Trust, was willing to loan money only if the lenders could take a security interest in property that was free of prior encumbrances. Anderson Builders owned no property meeting that requirement but obtained defendant's agreement to use property owned by JJR as security for a loan from plaintiffs of $52,000. Rogers signed a promissory note for the loan on behalf of "JJR Enterprises LLC." JJR then transferred $50,000 to Anderson Builders and applied $2,000 to pay delinquent property taxes so that plaintiffs could have the first lien on the property. It is undisputed that the loan transaction was not a transaction related to winding up and liquidating JJR.

When Anderson Builders stopped making its loan payments, plaintiffs brought this action for breach of contract, seeking payment from defendant personally for the amount of the loan obligation. Defendant responded that ORS 63.165 prevents plaintiffs from holding him personally liable for the debt solely on the basis of his membership in JJR and that there was no other basis to hold him personally liable for the debt. At trial, plaintiffs contended that defendant could be held personally liable for the loan obligation based on his membership in JJR, because the evidence established that defendant had actual knowledge of the dissolution or, alternatively, because ORS 63.165 provides no protection to members of an LLC for obligations that the LLC incurs after dissolution if the transaction was unrelated to winding up and liquidating the LLC. The trial court rejected both of plaintiffs' arguments and entered judgment for defendant. On appeal, plaintiffs do not challenge the court's finding that defendant lacked actual knowledge of JJR's dissolution, but they assign error to the court's conclusion that defendant is entitled to protection from personal liability under ORS 63.165.[4]

## II. ANALYSIS

The parties' dispute turns on the meaning of ORS 63.165(1), which provides:

---

[4] We reject without elaboration defendant's contention that plaintiffs did not preserve their argument about the scope of ORS 63.165.

> "The debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the limited liability company. A member or manager is not personally liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager."

As the Supreme Court has emphasized, "[e]ach sentence makes clear, in a different way, that a member or a manager of an LLC is not vicariously liable for the LLC's debts, obligations, and liabilities, as a general partner will be vicariously liable for the partnership's obligations." *Cortez v. Nacco Materials Handling Group*, 356 Or 254, 265, 337 P3d 111 (2014).[5] *Cortez* does not address, however, whether that immunity changes if the obligation arises from a post-dissolution transaction. To resolve that question of statutory construction we begin by considering the text and context of ORS 63.165. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (stating that text and context "must be given primary weight" in statutory construction analysis).

A. *Analysis of the Statutory Language*

The text of ORS 63.165(1) expressly describes the scope of the limited immunity it creates as extending to "debts, obligations and liabilities of a limited liability company." In other words, the text indicates that the legislature equated the test for whether an LLC member is vicariously liable for an obligation undertaken in the name of the LLC with the test for whether the LLC is responsible for the obligation. If the transaction creates a debt, obligation, or liability of the LLC, then members of the LLC are not personally liable for the debt "solely by reason of being or acting as a member" of the LLC.

---

[5] The court in *Cortez* also emphasized that ORS 63.165 reflects the legislature's intent that "a member or manager remains responsible for his or her acts or omissions to the extent those acts or omissions would be actionable against the member or manager if that person were acting in an individual capacity." 356 Or at 268-69. Plaintiffs do not contend, here, however, that there was a basis for holding defendant liable for actions in his individual capacity, *i.e.*, a basis for liability apart from the vicarious liability that a general partner would have for the partnership's obligations.

Although, as plaintiffs emphasize, a dissolved corporation is only authorized to carry on business "appropriate to wind up and liquidate its business and affairs," the legislature has provided that other post-dissolution transactions can still create an obligation for which the LLC is responsible. Specifically, ORS 63.629 provides that members of an LLC can bind the LLC through post-dissolution transactions, and thus create a debt of the LLC, if the transaction is "appropriate for winding up," but also if the transaction is entered into with a party that does not have "actual notice" it is transacting with a dissolved corporation or if the action of the LLC member is "otherwise authorized or ratified" by the LLC. Moreover, the legislature has provided that those obligations of the LLC can be enforced through an action against the dissolved LLC or, if the LLC's assets have already been distributed, to recover from the assets distributed to members. ORS 63.637(2)(c); ORS 63.645(2). As even unauthorized post-dissolution business can give rise to debts enforceable against the LLC, there is no textual support for plaintiffs' argument that ORS 63.165 applies only to post-dissolution transactions that are appropriate to "winding up" the LLC.

## B.  *Analysis of Statutory Context*

Although there may be intuitive appeal to the concept that there should be some consequence when an LLC continues to carry on regular business after allowing itself to be administratively dissolved, three aspects of the broader statutory context convince us that the legislature did not intend to make personal liability for LLC members that consequence. First, the legislature chose to allow LLC members to easily eliminate the restrictions on business activity that follow an administrative dissolution. ORS 63.654 provides that an administratively dissolved LLC can obtain *retroactive* reinstatement by correcting the grounds for dissolution. Thus, not only has the legislature made it easy for an administratively dissolved LLC to regain full authority to transact business, it also has made it easy for an LLC that transacts unauthorized business during the dissolution window to retroactively authorize that business.

Second, the potentially temporary nature of a period of administrative dissolution also makes an unauthorized transaction during that period of delinquency analogous to the unauthorized transactions by a corporation during a period of corporate delinquency that we said did not give rise to personal liability for the corporate directors under statutory provisions similar to the LLC provisions. *Creditors Protective Assn. v. Baksay*, 32 Or App 223, 226-27, 573 P2d 766 (1978). In *Baksay*, we addressed an obligation undertaken by the corporation during a period in which a corporation was delinquent in paying its annual fees and filing its annual report—and thus statutorily suspended from transacting business. *Id.* at 225-27. We emphasized:

> "Absent clear evidence of legislative intent to create personal liability, such statutes [suspending the right of delinquent corporations to transact business] have not been held to interrupt the existence of delinquent corporations so as to render its members liable as partners. Rather, they have been construed as affecting only the corporation's right to enforce contracts during the period of its delinquency."

*Id.* at 226 (internal citations omitted). We concluded that the statutory scheme made it "clear that the legislature did not intend for delinquency to give rise to personal liability" both because the statutes provided no express right of action against the individual corporate officers and because the statutes permitted creditors to enforce obligations resulting from such unauthorized transactions against the corporation's assets. *Id.* at 226-27. Both are true of the statutory scheme governing LLC's as well—the legislature has not expressly provided for enforcement of the LCC's post-dissolution debts against LLC members and has expressly provided a mechanism for recovering the debt from the assets of the LLC. As in *Baksay*, those aspects of the LLC statutory scheme indicate that the legislature did not intend the limitation on a dissolved LLC's business transactions to expose members of the LLC to personal liability for unauthorized transactions following administrative dissolution.

Finally, the legislature made clear its preference that members of an LLC should not be exposed to personal

liability for a debt of the LLC solely because the LLC engaged in an unauthorized transaction in the way that it has addressed liability for unauthorized transactions by foreign LLCs. That part of the Oregon Limited Liability Company Act (LLC Act) specifies that foreign limited liability companies must obtain authority from the Secretary of State before transacting business in Oregon, ORS 63.707, but also specifies that members of the foreign LLC do not acquire personal liability for a debt solely because the foreign LLC transacted business without authority to do so in Oregon:

> "A member of a foreign limited liability company is not liable for the debts and obligations of the foreign limited liability company solely by reason of the foreign limited liability company's having transacted business in this state without authority."

ORS 63.704(6). That statement of the scope of limited liability for members of a foreign LLC was enacted as part of the same bill that enacted ORS 63.165, the limited liability provisions for members of an Oregon LLC. Or Laws 1993, ch 173, §§ 35, 76. The statement in ORS 63.704(6) expresses the legislature's policy choice that personal liability for LLC members is not the consequence for an LLC engaging in unauthorized business. It reinforces our conclusion that the legislature intended the scope of ORS 63.165 immunity to be as broad as the text indicates.

Thus, both the text of ORS 63.165 and the statutory scheme the legislature adopted for LLCs lead us to conclude that the legislature did not intend to make members of an LLC personally liable for debts of the LLC solely because the debt arises from an unauthorized business transaction following an administrative dissolution.

C. *Plaintiff's Statutory Argument, ORS 63.637*

Plaintiffs' argument for a more limited scope to ORS 63.165 primarily relies on language that the 1995 legislature added to ORS 63.637, a statute that addresses the activity of an LLC following dissolution. That added language provides that, when an LLC has been dissolved, "[t]he limitation on personal liability otherwise provided in this chapter for members and managers shall continue

following dissolution for actions appropriate to the winding up and liquidation." ORS 63.637(1). According to plaintiffs, the express extension of immunity for post-dissolution actions appropriate to "winding up and liquidation" implies a rejection of immunity for all other post-dissolution actions of the LLC. Because there is no dispute that JJR's loan agreement with plaintiffs fell outside the scope of business necessary to "wind up and liquidate" the LLC, plaintiffs argue that the loan is an unauthorized transaction for which defendant is personally liable.

As a later-enacted provision, we do not treat the language added to ORS 63.637 in 1995 as context for what the 1993 legislature intended to include with the scope of the limited immunity provided in ORS 63.165. *See Gaines*, 346 Or at 177 n 16 ("Ordinarily, only statutes enacted simultaneously with or before a statute at issue are pertinent context for interpreting that statute."). Thus, the question is whether the language added to ORS 63.637 restricts the immunity described in ORS 63.165. We conclude that it does not.

First, the statement that LLC members retain immunity from personal liability when the dissolved LLC engages in business necessary to "wind up and liquidate" the LLC does not expressly create personal liability for other post-dissolution activity, *i.e.*, it does not provide that limited liability continues "only" for business necessary to wind up the dissolved LLC. Nor is the proposition announced by ORS 63.367 logically equivalent to a statement expressly creating personal liability for members when the dissolved LLC engages in other types of post-dissolution activity.[6]

Although legislative history does not explain why the 1995 legislature added the language to ORS 63.637, it suggests that the legislature did not amend ORS 63.637 to create personal liability for LLC members solely because the

---

[6] ORS 63.637 announces the proposition that, if the dissolved LLC engages in winding up business, then members have limited liability. Plaintiffs' proposition is the inverse of that statutory proposition and, thus, does not necessarily follow. For example, it is true that, if an animal is a squirrel, then it is also a mammal. But the inverse of that proposition—if the animal is not a squirrel, then it is not a mammal—does not necessarily follow as true. The same rule of logic holds for any proposition and its inverse.

LLC has engaged in ongoing business activity after being administratively dissolved. The key portion of ORS 63.637 was added to the existing LLC Act as part of Senate Bill (SB) 63 (1995), a bill proposed by the Oregon State Bar Limited Liability Task Force. Although the amendment to ORS 63.637 was part of the bill from the outset, it is not mentioned in any of the testimony or comments during the committee discussions. Nor do the stated purposes of the bill suggest that the addition to ORS 63.637 was intended to increase the potential for LLC members to acquire personal liability. Purposes that the sponsors of SB 63 considered "major" were to clarify that professionals can offer professional services under the LLC structure, to clarify that workers' compensation laws apply to LLCs, to properly cross-reference LLCs in other statutes applicable to LLCs, and to make it easier for family controlled LLCs to transfer control to a new (likely younger) group of family members. Testimony, Senate Judiciary Committee, SB 63, Jan 16, 1995, Ex E (statement of Donald W. Douglas and Mark A. Golding, Co-Chairs of the Limited Liability Company Task Force). The clear message conveyed to the legislature by the sponsors of SB 63 was that operating under an LLC structure offers many advantages to Oregon businesses, including the limited liability for members; that the LLC option had proved to be a very popular entity choice for Oregon businesses; and that the amendments proposed by SB 63 would "result in even greater use and acceptance of LLC[s]." *Id.* That message would be inconsistent with a legislative intent to increase the risk of personal liability to LLC members.

We do not suggest that the added language is meaningless. *See, e.g., State v. McAnulty*, 356 Or 432, 338 P3d 653 (2014) (court must construe statutes in a way that does not render any provision meaningless). But we need not presume that the 1995 legislature added that language to ORS 63.637 for the reason plaintiffs propose—to *implicitly* restrict the scope of the limited liability described in ORS 63.165. Instead, the additional provision could have been prompted by the very premise underlying the parties' dispute below—the premise that LLC members will be personally liable for post-dissolution obligations if they have actual knowledge that the LLC was dissolved. Because any action

undertaken for the purpose of winding up an LLC presumably would be undertaken with actual knowledge that the LLC had been dissolved, members of the task force, and the legislature, may well have believed it would be prudent to specify that LLC members retain limited liability for those winding-up transactions. Indeed, concern about that potential for personal liability may have arisen among proponents of the 1995 bill as a result of a case that we decided in September 1993.

In *Sivers v. R & F Capital Corp.*, 123 Or App 35, 858 P2d 895 (1993), *rev den*, 318 Or 351 (1994), in the course of considering the scope of a knowledge provision of the Corporations Act that is nearly identical to a knowledge provision in the LLC Act,[7] we emphasized:

> "This provision was adopted in 1987 as part of SB 303, and is virtually identical to section 2.04 of the Revised Model Business Corporation Act (1984) (RMBCA). *** As written, section 2.04 'impose[s] liability only on persons who act as or on behalf of corporations "knowing" that no corporation exists.'"

*Id.* at 38 (quoting *Model Business Corporations Act Annotated* § 2.04 at 133; brackets in *Sivers*).

Although our decision in *Sivers* discussed the "knowledge" rule in the context of transactions prior to incorporation, the language of the knowledge statutes it considered is not explicitly limited to pre-incorporation liability.[8] Thus *Sivers*, or concern about the knowledge concept discussed in *Sivers*, may well explain the amendment to ORS 63.637. Ultimately, we need not decide what prompted the amendment to ORS 63.637.

---

[7] ORS 60.054 provides:

"All persons purporting to act as or on behalf of a corporation, knowing there was no incorporation, are jointly and severally liable for all liabilities created while so acting."

ORS 63.054 provides:

"All persons purporting to act as or on behalf of a limited liability company, knowing the limited liability company was not then in existence, are jointly and severally liable for all liabilities created while so acting."

[8] Given the posture of the case on appeal, we do not address whether either ORS 60.054 or ORS 63.054 applies to personal liability for post-dissolution transactions.

We do not construe the amendment, added as part of a bill to increase the appeal of the LLC businesses structure, as intended to implicitly create greater potential for members of an LLC to be held personally liable for debts of the LLC. Thus, we construe the scope of the limited immunity created by ORS 63.165 as extending—as the text indicates—to post-dissolution obligations of the LLC, regardless of whether the obligation arises from business unrelated to winding up the LLC.

We emphasize that our decision addresses only the extent to which LLC members are liable for debts of the LLC "solely by virtue of being a member in the LLC," *i.e.*, the extent to which the members are vicariously liable for debts of the LLC. *See* ORS 63.165; *Cortez*, 356 Or at 265. We are not called upon to decide whether there was another basis to hold defendant individually liable for the loan obligation to plaintiffs or whether defendant would have been liable if plaintiffs had proved that he had actual knowledge of the dissolution.

Affirmed.